UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff(s), | ) | |
| vs. | ) | Case No. 1:08CR 110 HEA |
| TIMMY NATHAN JOHNSON, | ) | |
| Defendant(s). | ) | |

**REPORT AND RECOMMENDATION**

The defendant filed Defendant Timothy Johnson's Motion to Suppress Statements, Tangible Evidence and the Contents of Any Electronic Surveillance (Document #36). The government filed Government's Response to Defendant's Motion to Suppress Evidence (Document #39). An evidentiary hearing was held, a transcript of the hearing was ordered and the parties submitted briefs. The court compliments the parties on the thoroughness of their briefs. The briefs have been a great help to the court.

The government presented two witnesses at the evidentiary hearing: (1) Special Agent Bernie Gard of the Drug Enforcement Administration, and (2) Sergeant Mark McClendon of the Missouri State Highway Patrol.

The defendant presented no evidence.

**FACTUAL BACKGROUND**

DEA Special Agent Bernie Gard had received information from a DEA confidential informant prior to September 6, 2007, that Timmy Johnson was using a cellular telephone to further his activities in trafficking methamphetamine from the Nogales, Mexico, area to the Eastern District of

Missouri. Agent Gard requested an administrative subpoena for the defendant's telephone records covering the period of August 1, 2007, to September 6, 2007. Gard neither requested nor received any information which disclosed the contents of any communications, nor was he provided with any information in excess of what he had requested. All DEA procedures were followed to obtain this administrative subpoena.

A second administrative subpoena was issued for defendant's phone records using the same procedures and covering the period of time from September 1, 2007, until October 18, 2007. Again, Agent Gard neither requested nor received information outside of that which was requested, including the content of any communications. A third and final administrative subpoena was approved and issued on October 31, 2007, to obtain the electronic serial number (ESN) of the telephone which the defendant was using. Gard believed this information to be relevant to the investigation because he was in the process of preparing an application for a pen register, and needed the ESN to do so. The ESN was disclosed by the service provider, but no information that would disclose the contents of any communication was disclosed.

An application for a pen register and trap and trace device for the defendant's telephone was presented to the court on November 9, 2007. That application contained information about the investigation which indicated why the government believed that the information sought was relevant to the investigation. In summary form, the DEA had information from an individual who had been arrested with a large amount of methamphetamine in July of 2007 who indicated that the defendant was involved in trafficking methamphetamine with Jesus and Myrna Contreras from Nogales, Mexico. An analysis of the telephone records received to date indicated a number of contacts between the defendant's telephone and phones used by Myrna Contreras. Additionally, two subjects arrested in

Arkansas with methamphetamine obtained from Myrna Contreras had the defendant's telephone number in their phone's directory.

The court, United States Magistrate Judge Lewis M. Blanton, reviewed the application and approved the installation of the pen register and trap and trace device on the defendant's telephone for a period of sixty days. The terms of the court order did not permit the disclosure of the contents of any communication or any information that would directly locate the telephone within a protected space such that a search warrant or other legal process would be required. No such information was disclosed by the service provider.

On January 7, 2008, an application for extension of the pen register and trap and trace device was submitted to the court for approval. The government set out in the application for extension additional facts that had become known since the inception of the first order. Included in those facts was that agents conducting surveillance had observed Myrna Contreras leaving the defendant's home on November 28, 2007, and made a traffic stop of the vehicle that she was using. A drug detecting canine alerted to the vehicle, but a subsequent search did not disclose any narcotics. The application also indicated that the defendant's telephone had continued to have contact with telephones used by Myrna Contreras.

The court approved the extension of the pen register and trap and trace device for another 60 days on January 7, 2008. Again, the order did not permit the disclosure of the contents of any communication or of any information that would directly locate the telephone within a protected space. As before, the service provider did not disclose any information outside of the parameters of the court's order. The DEA terminated the use of the device early because they determined that they had sufficient information that they could discontinue the pen register.

**Interview and Search of Defendant's Residence on June 27, 2008**

On the morning of June 27, 2008, Agent Gard, in company with Missouri State Highway Patrol Sergeant Mark McClendon and Bootheel Area Drug Task Force Officer Marcus Hopkins conducted what is commonly referred to as a "knock and talk" interview with the defendant at his residence on County Road 344, near Caruthersville, Missouri. Sgt. McClendon and TFO Hopkins went to the front door of the residence and knocked. Agent Gard had gone around toward the back of the house. Johnson answered the door and Sgt. McClendon introduced himself and TFO Hopkins and indicated that they needed to speak with the defendant if they could. Johnson then invited the officers into the residence. Agent Gard came inside after he heard Sgt. McClendon yell to him. Agent Gard also showed Johnson his DEA credentials and told the defendant that they were there to speak with him about some people he knew and the trafficking of methamphetamine in Southeast Missouri. Johnson was told that he did not have to speak with the officers if he did not want to, that he was not under arrest and that if he did not want to answer questions that he could tell the officers to leave. Mr. Johnson said he would try to answer questions as truthfully as he could. Agent Gard testified Johnson was not advised of his <u>Miranda</u> rights. Johnson agreed to speak with the officers and made statements that implicated himself in the use and distribution of methamphetamine. Johnson never indicated that he wished to stop answering questions, but later, when his girlfriend called on his cell phone, he said, "You know what, let's do this another day. I can come meet you another day, and we'll talk about this. I'm afraid if my girlfriend stops by she'll know who you guys are, and I don't want that." (Tr. 22).

Gard testified, "I asked Mr. Johnson if it was okay if we searched his house for any illegal narcotics, asked him if he had any narcotics or any large amounts of cash or any weapons, and he said

it was fine if we searched the house." Id.

Immediately after being invited into the residence, Sgt. McClendon had observed a handgun lying on the kitchen counter. Johnson admitted that he was a regular user of methamphetamine and had been for some two or three years. Officers asked for and received Johnson's consent to search in addition to the residence, a shop building and a pickup truck located on the premises.

Agents located a loaded handgun on the kitchen counter. A set of digital scales containing methamphetamine residue and a canvas pouch containing plastic bags with the corners trimmed off were located on the kitchen table. Located in a drawer in the bedroom was a bag of material that Johnson indicated he used to "cut" methamphetamine. Items of drug paraphernalia were located in the shop building, and a loaded .22 rifle was located in the pickup truck that Johnson admitted he drove.

Both officers testified that during the search and interview Timmy Johnson did not appear to be intoxicated or under the influence of drugs or alcohol, did not appear to be ill, did not appear to have any difficulty in understanding the officers or making himself understood, never requested to speak with an attorney, never requested that officers leave the residence, was not frisked or handcuffed and was allowed to use the telephone. No weapons were displayed by the officers and no one made any threats or promises to Johnson, either to obtain his consent to speak with them or consent to search. At no time did Johnson attempt to limit or revoke his consent to search any of the property. Johnson was not arrested at the end of the interview. (Tr. 25-27, 48-50).

### Interview of June 30, 2008

On June 30, 2008, Sgt. McClendon and TFO Hopkins met with Johnson by agreement at the Dunklin County Justice Center. Johnson had arranged for his own transportation to the meeting and

was not transported there by the officers. Johnson was not advised of his Miranda right but was advised that he didn't have to speak with officers and that he was free to leave at any time. Johnson agreed to speak to the officers and made a number of what may fairly be characterized as self-incriminating statements during the interview. Johnson was not arrested at the end of this interview. The interview was recorded by Sgt. McClendon without Mr. Johnson's knowledge and the tape was introduced as Government Exhibit #8 at the hearing on the Motion to Suppress Evidence.

During the interview, Johnson never requested to speak with a lawyer or indicated that he wished the questioning to stop. No one forced Johnson to speak with the officers. Officers did not display their weapons and Johnson was not searched, handcuffed or restrained during the encounter.

## DISCUSSION

In his Motion to Suppress, the defendant seeks the exclusion from evidence of items seized from his residence located at 1375 County Highway 344 in Caruthersville, Missouri, of items seized from the shop building adjacent to the residence and the physical evidence seized from his person on or about June 27, 2008. The defendant stated in his motion to suppress that the evidence at issue consisted of a knotted bag containing an unknown white substance, a Vector digital scale and a black bag containing numerous plastic bags and a glass pipe, a plastic pill bottle containing a plastic baggy and a cardboard box containing eighteen glass test tubes and two glass smoking pipes plus numerous seized firearms, including a Marlin .22 caliber rifle and ammunition.

The defendant also seeks to suppress certain statements made by him to law enforcement officers during the search of his home on June 27, 2008, as well as statements made during an interrogation at the Dunklin County Justice Center at Kennett, Missouri, on June 30, 2008. The defendant alleges that any statements by him were elicited by coercion and without a defendant's

was not transported there by the officers. Johnson was not advised of his Miranda right but was advised that he didn't have to speak with officers and that he was free to leave at any time. Johnson agreed to speak to the officers and made a number of what may fairly be characterized as self-incriminating statements during the interview. Johnson was not arrested at the end of this interview. The interview was recorded by Sgt. McClendon without Mr. Johnson's knowledge and the tape was introduced as Government Exhibit #8 at the hearing on the Motion to Suppress Evidence.

During the interview, Johnson never requested to speak with a lawyer or indicated that he wished the questioning to stop. No one forced Johnson to speak with the officers. Officers did not display their weapons and Johnson was not searched, handcuffed or restrained during the encounter.

## DISCUSSION

In his Motion to Suppress, the defendant seeks the exclusion from evidence of items seized from his residence located at 1375 County Highway 344 in Caruthersville, Missouri, of items seized from the shop building adjacent to the residence and the physical evidence seized from his person on or about June 27, 2008. The defendant stated in his motion to suppress that the evidence at issue consisted of a knotted bag containing an unknown white substance, a Vector digital scale and a black bag containing numerous plastic bags and a glass pipe, a plastic pill bottle containing a plastic baggy and a cardboard box containing eighteen glass test tubes and two glass smoking pipes plus numerous seized firearms, including a Marlin .22 caliber rifle and ammunition.

The defendant also seeks to suppress certain statements made by him to law enforcement officers during the search of his home on June 27, 2008, as well as statements made during an interrogation at the Dunklin County Justice Center at Kennett, Missouri, on June 30, 2008. The defendant alleges that any statements by him were elicited by coercion and without a defendant's

was not transported there by the officers. Johnson was not advised of his Miranda right but was advised that he didn't have to speak with officers and that he was free to leave at any time. Johnson agreed to speak to the officers and made a number of what may fairly be characterized as self-incriminating statements during the interview. Johnson was not arrested at the end of this interview. The interview was recorded by Sgt. McClendon without Mr. Johnson's knowledge and the tape was introduced as Government Exhibit #8 at the hearing on the Motion to Suppress Evidence.

During the interview, Johnson never requested to speak with a lawyer or indicated that he wished the questioning to stop. No one forced Johnson to speak with the officers. Officers did not display their weapons and Johnson was not searched, handcuffed or restrained during the encounter.

## DISCUSSION

In his Motion to Suppress, the defendant seeks the exclusion from evidence of items seized from his residence located at 1375 County Highway 344 in Caruthersville, Missouri, of items seized from the shop building adjacent to the residence and the physical evidence seized from his person on or about June 27, 2008. The defendant stated in his motion to suppress that the evidence at issue consisted of a knotted bag containing an unknown white substance, a Vector digital scale and a black bag containing numerous plastic bags and a glass pipe, a plastic pill bottle containing a plastic baggy and a cardboard box containing eighteen glass test tubes and two glass smoking pipes plus numerous seized firearms, including a Marlin .22 caliber rifle and ammunition.

The defendant also seeks to suppress certain statements made by him to law enforcement officers during the search of his home on June 27, 2008, as well as statements made during an interrogation at the Dunklin County Justice Center at Kennett, Missouri, on June 30, 2008. The defendant alleges that any statements by him were elicited by coercion and without a defendant's

being advised of the Miranda warnings and, as a result, the statements were involuntary and inadmissible. The defendant also claims that any statements made by him were the result of an illegal arrest and are, therefore, inadmissible.[1]

Finally, defendant seeks an order suppressing and prohibiting the government from introducing into evidence at trial information about any and all wire communications (including pen registers) in which the defendant participated and any evidence derived from the information obtained from the electronically intercepted communications.

The defendant summarized his arguments by stating that, as a result of the lack of a search warrant authorizing the search of Mr. Johnson's home and curtilage, the failure to advise the defendant of his rights prior to being interrogated by law enforcement officers and the failure of the government to follow federal law regarding the use and installation of pen register devices on the phone allegedly being used by Mr. Johnson, the items seized at the defendant's home, statements made at his home and at the later interview at the law enforcement office, as well as the data provided by the pen register, are all fruits of illegal conduct and, therefore, cannot be used in criminal proceedings against the defendant. (Motion to Suppress at 8).

## The Search of Defendant's Home and Interview on June 27, 2008

The factual background set out earlier in this report includes the information about the entry by DEA Special Agent Bernie Gard, Missouri State Highway Patrol Sergeant Mark McClendon and Bootheel Area Drug Task Force Officer Marcus Hopkins into the defendant's residence near Caruthersville, Missouri.

---

[1]The defendant was not arrested either on June 27, 2008, after the search and interview or after the interview on June 30, 2008.

Sergeant McClendon knocked on the front door and introduced himself and Officer Hopkins and indicated that he needed to speak with the defendant if they could. Agent Gard, who had gone to the rear of the home, also came to the front door. McClendon testified that Mr. Johnson invited the officers into his house. Agent Gard explained why the officers were there. He told Mr. Johnson the officers needed to ask him some questions about his relationship or his knowledge about Myrna Contreras and narcotics activity related to Ms. Contreras and himself. Mr. Johnson was told he was not under arrest. He was told he did not have to talk to the officers. He was not advised of his Miranda rights. Both Gard and McClendon testified that Johnson agreed to speak with them. (Tr. 21, 46). Mr. Johnson said he would try to answer questions as truthfully as he could. Johnson was told that if he did not want to answer questions, he could tell the officers to leave. (Tr. 20, 45-46).

The defendant did make statements that implicated himself concerning the use and distribution of methamphetamine. He did not tell the officers that he wished to stop answering questions, but when his girl friend called on the cell phone, he said, "You know what, let's do this another day. I can come meet you another day, and we'll talk about this. I'm afraid if my girlfriend stops by she'll know who you guys are, and I don't want that." (Tr. 22).

When the officers had first gone into the defendant's home, McClendon had seen a handgun lying on the kitchen counter. At the evidentiary hearing, Agent Gard testified, "I asked Mr. Johnson if it was okay if we searched his house for any illegal narcotics, asked him if he had any narcotics or any large amounts of cash or any weapons, and he said it was fine if we searched the house." (Tr. 22).

Agent Gard testified that Mr. Johnson gave consent to search the area outside of his house, including the shop building, and stated that Gard believed Johnson walked the officers over to the

shop building and unlocked it for the officers to go in. (Tr. 24). The officers searched a pickup truck parked outside the residence which Johnson said he had been using for several weeks. There was a loaded .22 caliber rifle found in the vehicle which was seized.

As was noted earlier in the factual background, Mr. Johnson did not appear to be intoxicated or under the influence of drugs or alcohol when he consented to the search and when the officers spoke with him. He did not appear to be ill or have any difficulty in understanding the officers or making himself understood. He never requested to speak with an attorney and never requested that the officers leave the residence. He was not frisked or handcuffed, and he was allowed to use the telephone. The officers testified that no weapons were displayed by the officers, and no one made any threats or promises to Mr. Johnson, either to obtain his consent to speak with them or to consent to the search. Johnson did not attempt to limit or revoke his consent to search any of the property. He was not arrested at the end of the interview. (Tr. 25-27, 48-50).

The defendant states in his motion to suppress, "The issue to be determined is whether 'a reasonable person in the subject's position would have understood the situation' to be one of custody. Berkemer v. McCarty, 468 U.S. 420, 429 (1984)." This test of custody applies both to the defendant's statements when his home was searched, as well as the interview later on December 30, 2008, when Mr. Johnson was interviewed at the Dunklin County Justice Center in Kennett, Missouri.

As the parties know, the custody question is key because there is no debate that the defendant was being questioned, or interrogated, both when his home was searched and during the later interview at the Justice Center. Miranda warnings must be given only when a suspect is both in custody and being subject to interrogation. Illinois v. Perkins, 496 U.S. 292, 297 (1990). If the defendant was in custody, he should have been given the Miranda warnings in order for his statements

to be admissible at trial.

The court finds from the evidence adduced at the evidentiary hearing that the officers were invited into the defendant's home on June 27, 2008, that the defendant was not in custody during the search and questioning and, consequently, no Miranda warnings were required. The defendant voluntarily consented to the search and the evidence seized from the home, the shed and the defendant's vehicle were seized pursuant to a consent search. They should not be suppressed and are admissible at trial.

Based on the totality of circumstances set out above, the court finds the statements by the defendant at his home were voluntarily made, should not be suppressed and are admissible in evidence.

## **Interview of June 30, 2008**

Sergeant McClendon testified that as the officers were leaving the defendant's home on June 27, 2008, Mr. Johnson indicated that he would like to speak with officers at a later time when there was a little bit more time and conditions a little bit more conducive to talking. McClendon testified that he remembered talking on the phone back and forth between the 27th and the 30th, trying to make arrangements to have a sit-down with Mr. Johnson. (Tr. 51).

On June 30, 2008, Sergeant McClendon and TFO Hopkins met with Mr. Johnson at the Dunklin County Justice Center in Kennett, Missouri. Mr. Johnson drove himself to the meeting. He was not advised of his Miranda rights, but he was advised that he did not have to speak to the officers and that he was free to leave at any time. (Tr. 51-52, Gov. Ex. #8). The defendant agreed to speak with the officers. The interview was tape-recorded by Sergeant McClendon without Mr. Johnson's knowledge, and the tape was introduced as Government's Exhibit #8 at the evidentiary hearing.

- 10 -

During the interview, Mr. Johnson never requested to speak with an attorney or indicated that he wished the questioning to stop. Officers did not display weapons, and Mr. Johnson was not searched, handcuffed or restrained during the meeting. No one yelled during the interview. Although the interview was at the Justice Center, it was not conducted in the jail portion but in a different part of the Justice Center. (Tr. 55-57).

Although Sergeant McClendon stated that no promises were made in order to get Mr. Johnson to talk to the officers, some of the things that were said by the officers during the interview are of concern.

At one point in the interview, fairly early, one of the officers said to Mr. Johnson, "In order for us to provide you assistance...." That sentence was not finished and the officer took another tack in trying to get Mr. Johnson to tell all he knew. Mr. Johnson was told he was looking at a sentence of ten years. He was told if he cooperated and gave information, "You're looking at taking that ten down to something more manageable."

At one point, when the officers felt that Mr. Johnson was not telling all he knew, he was advised that he was not helping himself. He was told the only way he could help himself out was, (1) tell the truth, (2) make phone calls [to implicate others]. He was told that if he would cooperate, "You'd come out smelling like a rose." He was told, "You don't have to worry about us using this against you." Sergeant McClendon told Mr. Johnson that Sergeant McClendon could have the U. S. Attorney write up a proffer so that what he was saying would not be used against him.

Johnson was told, "You're not cooperating so you're not getting anything out of it [the interview]." Johnson was told he could help himself out.

The officers told Johnson he seemed to have a memory lapse. He was asked if a proffer

- 11 -

would help with some of the memory loss. He was asked if it would help "if we would write a letter saying anything you say from this time forward wouldn't be used against you."

At one point, Johnson was told if he gave his best information "We'd go to bat for you--you'd get a slap on the wrist and get out."

With regard to a proffer, Johnson stated, "I'll give it some thought. I may get back to you."

When speaking about sentences others who cooperated received, one officer stated, "We've seen people drop from ten to two."

Toward the end of the interview, Sergeant McClendon said, "Next time, I'll have a letter drawn up saying nothing you say will hurt you." At the end of the interview, Sergeant McClendon said, "I'll get it drawn up tomorrow."

In spite of the enticements offered to him, Johnson maintained throughout the interview that the most illegal drugs he ever saw in Myrna Contreras's possession was a gram of methamphetamine or an eight-ball. When he was told that there were many others who had given information about his trafficking in large quantities of methamphetamine, Johnson maintained that the things other people were saying were not true.

The tone was conversational throughout the interview. At the beginning of the interview, he was reminded he could leave at any time.

The defendant had voluntarily come to the interview of his own accord. During the interview, the defendant did not "spill all." At the end, after a proffer had been proposed, before he left, the defendant said, "I'll give it some thought and may get back to you."

The court finds the defendant was not in custody at the Dunklin County Justice Center when he was interviewed on June 30, 2008. If a suspect is interrogated at a police station, courts consider

whether the suspect voluntarily went to the police station. United States v. Galceran, 301 F.3d 927, 930-31 (8th Cir. 2002) (Miranda warnings were not required because the defendant voluntarily went to the police station upon request and was not interviewed in the holding cell area) Consequently, it was not necessary that Miranda warnings be administered to Timmy Johnson before the interview.

Confessions coerced from a defendant are not admissible at that defendant's trial. Chavez v. Martinez, 538 U.S. 760, 770 (2003). To determine if a defendant's statements were involuntary, the court must ask whether, in the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused. Haynes v. Washington, 373 U.S. 503, 513-14 (1963). The inquiry centers upon (1) the conduct of law enforcement officials in creating pressure, and (2) the suspect's capacity to resist that pressure. Mincey v. Arizona, 437 U.S. 385, 399-401 (1978). In Colorado v. Connelly, the Supreme Court emphasized that coercion by a state actor is a necessary element to find that a defendant's statement was involuntary.

It is clear to the court from viewing the video tape of the interview on June 30, 2008, that the defendant's will was not overborne by the statements of the officers. From beginning to end of the interview, the defendant maintained that the only knowledge he had of drug activity by Myrna Contreras was seeing as little as one gram or an eight-ball of methamphetamine. In the words of one of the interviewers, Mr. Johnson never told all he knew. The interviewers tried to convince Mr. Johnson that he should tell everything, but it is clear from the statements in the video that he did not do so. All the way through the interview, it is clear that Mr. Johnson had the capacity to resist the pressure exerted on him. At the end of the interview, the defendant was going to "give it some thought" when a proffer was proposed. He then said, "I may get back to you."

The fact that the interview took place at the Justice Center is not determinative. Galceran,

301 F.3d at 930-31. At the time of the interview, the defendant was mature, being 49 years of age. There was no indication he had any serious physical condition. Promises of leniency have been held not to necessarily render a confession involuntary. United States v. Jacobs, 431 F.3d 99, 112-13 (3rd Cir. 2005) (statements voluntary despite FBI agents promise not to use statements against defendant because all other circumstances pointed to voluntariness); United States v. Mashburn, 406 F.3d 303, 309-10 (4th Cir. 2005) (confession voluntary even though agents told defendant he faced a ten-year sentence and the only way to reduce sentence was to cooperate); United States v. Santiago, 410 F.3d 193, 202-03 (5th Cir. 2005) (statement voluntary despite deputies' assurances, prior to statement, that defendant would not be arrested if he cooperated).

The court finds the defendant's statements at the interview at the Dunklin County Justice Center on June 30, 2008, were voluntary, were not the result of coercion and may be introduced into evidence.

### **Telephone Records**

There was extensive testimony by Agent Gard concerning his obtaining defendant's telephone records by means of an administrative subpoena and pen register and trap and trace devices. The first seven exhibits offered by the government at the evidentiary hearing and admitted into evidence were the three Administrative Subpoenas issued, the Application for Pen Register and Trap and Trace Device dated November 9, 2007, followed by an Order dated the same date; and an Application for a First Extension of the Pen Register and Trap and Trace Device dated January 7, 2008, and the Order granting the application.

The court finds the Administrative Subpoenas were issued in conformity with law, and the Applications for Pen Register and Trap and Trace Devices, as well as the Application for Extension,

provided the proper information required by statute and in other respects were in conformity with federal law. The applications provided substantial information concerning the defendant's involvement in drug trafficking and his use of the telephone to maintain contact with others who are suspected of trafficking drugs with him. The government did not obtain information outside the limits of the authorization by either the administrative subpoenas or the court orders for pen register information, nor did the government maintain the pen register any longer than was reasonably necessary to further the investigative goals. (Tr. 15).

Since the information obtained by means of the administrative subpoenas, as well as the trap and trace and pen register devices, met the requirements of law, they should not be suppressed and are admissible in evidence.

The defendant, in his Supplemental Motion and Memorandum of Law, cites Manning v. Bowersox, 310 F.3d 571 (8th Cir. 2002), quoting language that applied in a case in which the defendant had been charged by complaint. The Manning case states, "The right to counsel attaches to interrogations conducted after the initiation of adversarial criminal proceedings against the defendant; it is of no import whether the proceedings were initiated by complaint or indictment," citing Maine v. Moulton, 474 U.S. 159, 171, 106 S.Ct. 477 (1985). Manning also cited Gilmore v. Armentrout, 861 F.2d 1061, 1070 (8th Cir. 1988) (recognizing Sixth Amendment applies to "interrogation activities conducted 'at or after the initiation of adversary criminal proceedings-- whether by way of formal charge, preliminary hearing, indictment, information or arraignment'").

In the case of Mr. Johnson, adversary criminal proceedings had not been initiated. Manning v. Bowersox is not applicable to Timmy Johnson's case.

Pursuant to the foregoing,

**IT IS, THEREFORE, RECOMMENDED** that Defendant Timothy Johnson's Motion to Suppress Statements, Tangible Evidence and the Contents of Any Electronic Surveillance (Document #36) be denied,

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

                                                                                   /s/ Lewis M. Blanton
                                                                                   LEWIS M. BLANTON
                                                                                   UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of January, 2009.